IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
*Southern Division*

|  |  |
|---|---|
| **ARIUS ADAMS,** | * |
| Plaintiff, | * |
| v. | * Case No.: PWG 19-2263 |
| **THE WHITESTONE GROUP, INC.,** | * |
| Defendant. | * |

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

Arius Adams, through counsel, brought this action against his former employer, The Whitestone Group, Inc., alleging interference with his rights under the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. §§ 2615 (a), and retaliation in violation of the FMLA Pending is Defendant's Motion for Summary Judgment, ECF No. 70, and Plaintiff's Cross-Motion for Summary Judgment, ECF No. 73. I have reviewed the filings[1] and find a hearing unnecessary. *See* Loc. R. 105.6 (D. Md. 2021). Because the Plaintiff fails to establish his eligibility under the FMLA, I shall GRANT summary judgment to the Defendant, and DENY Plaintiff's cross-motion for summary judgment.

### BACKGROUND

Arius Adams began working for The Whitestone Group, Inc. in May 2016 as an armed security officer, often referred to as a PSO,[2] on site at the National Institute of Science and

---

[1] Defendant's Motion for Summary Judgment, ECF No. 70; Plaintiff's Response in Opposition and Cross-Motion for Summary Judgment, ECF No. 73; Defendant's Reply and Response in Opposition to Plaintiff's Cross-Motion, ECF No. 77; Plaintiff's Reply, and the attached exhibits.
[2] PSOs controlled access to NIST's buildings, verified badges for persons visiting or entering the premises, and patrolled the grounds. LaRe Dep. 90.

Technology ("NIST") in Gaithersburg, Maryland. LaRe Dep. 85, ECF No. 70-2, 74-2; Adams Dep. 81, 109-10, ECF No. 70-5, 74-3. In March 2018, Adams was promoted to supervisor. LaRe Dep. 93; Adams Dep. 116; Status Rpt., ECF No. 73-5. Around the same time, Adams learned that his wife was pregnant with their second child. Adams Dep. 52; Christian Dep. 71, ECF No. 70-12. He advised his supervisors,[3] telling them that the pregnancy was high-risk. Adams Dep 166-70; Hinton Dep. 54, 112-13, ECF No. 70-10; Brewer Dep. 68-69, 75, ECF No. 70-9.

While Adams was working in Maryland and living with his mother in Gaithersburg, his wife,[4] Jasmine Christian, lived in South Carolina with their daughter, and Adams traveled to South Carolina to visit as often as he could. Adams Dep. 27-30; Christian Dep 13-23. Ms. Christian's pregnancy with their daughter had also been complicated, and she had experienced miscarriages. Christian Dep. 86-88. Ms. Christian was placed on bed rest, had to take various medications, and underwent a cerclage procedure to help prevent another miscarriage. Christian Dep. 79-80; Adams Dep. 53. She also experienced preterm labor multiple times beginning as early as her second trimester. Christian Dep. 81. Early morning on October 22, 2018, Ms. Christian called Adams just as he was arriving at NIST for work and told him that she had gone into labor prematurely, additional measures beyond medication were being taken, and to "stand by." Christian Dep. 127-32; Adams Dep 200. The cerclage stitch had been removed, and she had been transferred to a different hospital with a neo-natal intensive care unit, but she did not yet know if delivery would be successfully delayed. Christian Dep. 123-130. Adams did not advise his supervisor, Hinton, who had not yet arrived at work, about the situation. Adams Dep. 201.

---

[3] Adams' immediate supervisor was Timothy Hinton, the NIST Program Manager, who reported to Michael Brewer, the Regional Operations Manager, who reported to Jeff LaRe, the Executive Vice President of Whitestone. Brewer Dep. 13, 23; Adams Dep. 170. All three knew about the pregnancy. Adams Dep. 166, 169-70; Brewer Dep. 68; Hinton Dep. 54, 112-13.

[4] Adams and Ms. Christian married on February 14, 2018. Adams Dep. 46.

2

Ms. Christian called Adams again at about 8:00 a.m. to provide a status update, informing him that the contractions had not stopped and that she was between four to five centimeters dilated, which could mean that the baby would be delivered that day. Christian Dep. 131-32. Adams then spoke to Hinton, told him that his wife was in labor and that he needed to leave right away. Adams Dep. 207-08; Hinton Dep. 54-56, 113. Hinton asked if Adams could take the time to find a replacement,[5] and Adams said he would try to make some calls, but he did not find a replacement before leaving, and his shift supervisor post went unfilled for seven-and-a-half hours. Hinton Dep. 56; Adams Dep. 208; Brewer Dep. 133. Adams completed a leave slip at Hinton's request, handed it to Hinton, left NIST, went home to pack a bag and buy an airline ticket, and arrived in South Carolina around 1:00 p.m. Adams Dep. 209, 213, 215; Adams II Dep. 369, 399, 405; ECF No. 70-15; Hinton Dep. 56, 100; Christian Dep. 140; Leave Form, ECF No. 73-13. On landing, Ms. Christian texted Adams to let him know that she hadn't dilated any further and not to rush. Txt Msg 821, ECF No. 70-17. Although she continued to have contractions, Ms. Christian was discharged from the hospital a few days later, returned to the hospital two days after that, and Roman Adams was born on October 31, 2018. Christian Dep. 141; Adams Dep. 49, 345-46.

Adams returned to work at NIST on November 5, 2018 and was presented with a "Last Chance Agreement" to sign because he had abandoned his post. Adams Dep. 278-80; Hinton Dep. 107-08; Last Chance Agmt, ECF No. 73-15. On December 11, 2018, Whitestone demoted Adams from supervisor to PSO because Adams' security clearance, a requirement to be a supervisor, could not be verified in a government audit. LaRe Dep. 112, 167; Hinton Dep. 158; Adams Dep. 117-

---

[5] An unsupervised guard post created a security risk, and Whitestone was subject to financial penalties for leaving a post unsupervised. LaRe Dep. 131-132.

18, 121; Brewer Dep. 19, 114. On January 1, 2019, Adams failed a "penetration" test[6] at the NIST site. LaRe Dep. 113, 116; Brewer Dep. 89-90, 97-99; Adams Dep. 303, 310-316; Adams III Dep. 616-17, 621-22, 644-45, ECF No. 70-13. Whitestone investigated; Adams' co-worker on duty at that time was placed on probation, and Adams was terminated on January 9, 2019. Adams II Dep. 377-79; LaRe Dep. 113-15; Term Ltr., ECF No. 73-18; Corr. Action, ECF No. 73-17.

After termination, Adams moved to South Carolina to be with his family and sought replacement employment. Adams II Dep. 512-13. He secured new employment on May 9, 2019 but at a lower hourly rate than he'd earned at Whitestone. Adams II Dep. 487-88, 500-01.

Adams filed suit in the Circuit Court for Montgomery County on June 28, 2019, and Whitestone removed the case to this Court on August 5, 2019. Not. Removal, ECF No. 1.[7] Adams seeks compensatory and punitive damages for interference with his FMLA rights and for retaliation. Compl., ECF No. 2. Both parties move for summary judgment in their favor, and Adams requests an evidentiary hearing to determine the extent of his damages.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(a) provides for the judgment in favor of the movant "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." In reviewing the evidence related to a motion for summary judgment, the Court considers undisputed facts, as well as the disputed facts viewed in the light most favorable to the non-moving party. *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009); *George & Co., LLC v. Imagination Entm't Ltd.*, 575 F.3d 383, 391–92 (4th Cir. 2009); *Dean v. Martinez*,

---

[6] As part of a quarterly quality control report for the government, Brewer conducts a test, one of which is a penetration test, in which he tries to penetrate guardhouse security. Brewer Dep. 90-102.

[7] Whitestone also notified the Court on November 30, 2021 that Adams filed a Complaint in the Circuit Court for Montgomery County, Maryland claiming wrongful discharge in violation of Maryland public policy. Not., ECF No. 80.

336 F. Supp. 2d 477, 480 (D. Md. 2004). Only factual disputes that "might affect the outcome of the suit under governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Additionally, the factual dispute must be genuine to defeat a motion for summary judgment, in that "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*; *Scott v. Harris*, 550 U.S. 372, 380 (2007) ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record. . . a court should not adopt that version."). It is the nonmoving party's burden to confront a motion for summary judgment with affirmative evidence to show that a genuine dispute of material fact exists. *Anderson*, 477 U.S. at 256. A plaintiff nonmovant, "to survive the defendant's motion, need only present evidence from which a jury might return a verdict in his favor." *Id.*

"On cross motions for summary judgment, 'each motion [is] considered individually, and the facts relevant to each [are] viewed in the light most favorable to the non-movant.'" *Lynn v. Monarch Recovery Mgmt., Inc.*, No. WDQ-11-2824, 2013 WL 1247815, at *1 n.5 (D. Md. Mar. 25, 2013) (quoting *Mellen v. Bunting*, 327 F.3d 355, 363 (4th Cir. 2003)). "Cross motions for summary judgment 'do not automatically empower the court to dispense with the determination whether questions of material fact exist.' " *Equal Rights Ctr. v. Archstone Smith Tr.*, 603 F. Supp. 2d 814, 821 (D. Md. 2009) (quoting *Lac Courte Oreilles Band of Lake Superior Chippewa Indians v. Voigt*, 700 F.2d 341, 349 (7th Cir. 1983)). Rather, the Court considers "each motion separately on its own merits to determine whether either of the parties deserves judgment as a matter of law." *Defs. of Wildlife v. N. Carolina Dep't of Transp.*, 762 F.3d 374, 392 (4th Cir. 2014) (quoting *Bacon v. City of Richmond, Va.*, 475 F.3d 633, 638 (4th Cir. 2007)).

## ANALYSIS

The FMLA was enacted, in part, "to entitle employees to take reasonable leave for medical reasons." 29 U.S.C. § 2601(b)(1)-(2). The FMLA entitles an "eligible employee" to "a total of 12 workweeks of leave during any 12-month period" for the care of a newborn son or daughter; for the care of a spouse, parent, son, or daughter with a "serious health condition"; and/or for the employee's own "serious health condition that makes the employee unable to perform [his or her work] functions." 29 U.S.C. § 2612(a)(1). Pursuant to the FMLA, "an eligible employee is entitled to a total of twelve workweeks of leave during any twelve-month period and, upon return to work, restoration to the position held when the leave commenced or to an equivalent position." *Rodriguez v. Smithfield Packing Co.*, 545 F. Supp. 2d 508, 515 (D. Md. 2008) (citing 29 U.S.C. § 2614(a)(1)(A)-(B)).

> To establish unlawful interference with an entitlement to FMLA benefits, an employee must prove that: (1) she was an eligible employee; (2) her employer was covered by the statute; (3) she was entitled to leave under the FMLA; (4) she gave her employer adequate notice of her intention to take leave; and (5) the employer denied her FMLA benefits to which she was entitled.

*Id.* at 516 (citations omitted). The employee also must prove "that the violation prejudiced her in some way." *Anderson v. Discovery Commc'ns, Inc.*, 517 F. App'x 190, 197 (4th Cir. 2013) (citing *Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81, 89 (2002); 29 U.S.C. § 2617(a)(1)); *see also Rodriguez*, 545 F. Supp. 2d at 523 (stating that no relief is available if the "violation caused no harm").

Whitestone argues that Adams cannot establish his FMLA claims because (1) he was not an eligible employee; (2) he failed to provide timely notice of his intent to take FMLA-protected leave; (3) he failed to follow Whitestone's leave policies and procedures; and (4) he cannot establish that Whitestone denied him any leave to which he was entitled. Def.'s Mot. Mem. 2.

6

Adams contends that Whitestone is equitably estopped from challenging his eligibility under the FMLA because he relied on Whitestone's representation that his leave was approved FMLA time. Pl.'s Mot. Mem. 9. Adams argues that Whitestone interfered with his FMLA rights by "immediately placing him on a 'Last Chance Agreement' the day he returned from leave, demoting him roughly a month after returning, and terminating him for taking the leave." Pl.'s Mot. Mem. 19. Whitestone adds that an applicable collective bargaining agreement waived Adams' right to pursue in a federal court any FMLA claims arising from his termination. Def.'s Mot. Mem. 2.

A threshold element of an FMLA claim is whether a plaintiff was an eligible employee under the FMLA. *See Yoo v. BMW Manufacturing Co. LLC*, 2020 WL 415897, at *3 (D.S.C., 2020) ("Not all employees are eligible to take such leave, so the issue of FMLA eligibility is a threshold question in FMLA suits." (citations omitted)); *Ruddy v. Bluestream Professional Serv.*, LLC, 444 F. Supp. 3d 697, 714 (E.D. Va. 2020) (analyzing employee eligibility as a threshold issue). An "eligible employee" is one with at least one year of employment with the employer, and who worked a minimum of 1,250 hours during the twelve months prior to the first day requested for leave. 29 U.S.C. § 2611(2)(A); *see* 29 C.F.R. § 825.111. At the time of giving notice of the need for leave, the employee must also have been employed at a worksite where there are least fifty or more employees within a seventy-five mile radius. *Id.* § 2611(2)(B)(ii); 29 C.F.R. § 825.110 (e). An employee must satisfy each of these criteria independently to be eligible for FMLA leave. *See* 29 C.F.R. § 825.110.

There is no dispute that Adams worked for Whitestone for at least a year and worked a minimum of 1,250 hours prior to taking leave. Adams gave notice of his intent to take leave on October 22, 2018. Whitestone asserts that on the week beginning October 21, 2018, Whitestone "did not employ 50 or more employees within 75 miles of NIST," which means Adams was not

an "eligible employee." Def.'s Mot. Mem. 18-19; *see* Def.'s Ex. C at 4 (responding to Plaintiff's Interrogatory No. 3). Adams does not dispute this fact but argues that Whitestone is equitably estopped from raising this defense because he relied on Whitestone's representation that his leave was approved FMLA time. Pl.'s Mot. Mem. 9-11.

As Adams notes, the Fourth Circuit has never applied nor adopted an equitable estoppel doctrine in the context of FMLA claims. Pl.'s Mot. Mem. 10; *see also Adams v. Buckeye Fire Equipment Co.*, 3:19-cv-422-MOC-DSC, 2021 WL 1063796, at *4 (W.D.N.C. Mar. 18, 2021) (declining to apply an estoppel theory given the lack of authority from the Fourth Circuit); *but see Schmidt v. Town of Cheverly, Md.*, 2014 WL 4799039, at *6 (D. Md. 2014) (noting that several other circuits and at least one district court within the Fourth Circuit had applied equitable estoppel in the context of FMLA eligibility, and considering without finding equitable estoppel due to the lack of detrimental reliance).

Equitable estoppel applies when "one party has made a misleading representation to another party and the other has reasonably relied to his detriment on that representation." *Bakery & Confectionery Union and Indus. Intern. Pension Fund v. Ralph's Grocery Co.*, 118 F.3d 1018, 1027 (4th Cir. 1997) (citation omitted). Importantly, to show detrimental reliance, a party must have relied on the misrepresentation "in such a manner as to change his position for the worse." *Heckler v. Cmty. Health Servs.*, 467 U.S. 51, 59 (1984). And "that reliance must have been reasonable in that the party claiming the estoppel did not know nor should it have known that its adversary's conduct was misleading." *Id.* "[T]he critical inquiry is whether or not the employee would have taken leave in the absence of the misrepresentation concerning FMLA leave." *Moss v. City of Abbeville*, 740 F. Supp. 2d 738, 758 (D.S.C. 2010) (citing *Ragsdale*, 535 U.S. at 90). If an employee fails to adequately show that she would have taken a different action regarding leave

8

"had her employer properly informed her of her FMLA eligibility," courts have concluded that the employee cannot show detrimental reliance and therefore cannot prevail on an estoppel theory. *Id.* (citing *Weidner v. Unity Health Plans Ins. Corp.*, 606 F. Supp. 2d 949, 958 (W.D. Wis. 2009); *Miller v. Personal-Touch of Va., Inc.*, 342 F. Supp. 2d 499, 515 (E.D. Va. 2004)).

Adams argues that his supervisor, Hinton, knew that maternity leave falls under the FMLA, and that he was instructed to fill out a leave request form before leaving, which Hinton approved. Pl.'s Mot. Mem. 10; *see* Hinton Dep. 53-56, 68, 84-90, 100., 134-35; Adams Dep. 346-47; Leave Form. Adams further argues that he reasonably relied on Hinton's statements that his leave would be protected FMLA time, although he does not relate what those statements were, and he states that he left only after Hinton gave him approval to leave. Pl.'s Mot. Mem. 11. He also asserts that he did not know, nor was there any reason for him to know, how many employees were employed at NIST on any given week. *Id.* at 11-12. Adams adds that after October 18, 2022, he was informed that he qualified for FMLA leave, including completion of formal FMLA paperwork that was approved, and a second FMLA request was approved on December 18, 2018. *Id.* at 12-13 (citing LaRe Dep. 152-53, 157; Not. Eligibility, ECF No. 74-10; Second Request, ECF No. 73-20). Also, Adams asserts that there was no communication from anyone at Whitestone indicating that he was not eligible for FMLA leave until this litigation began. *Id.* at 13.

Regardless whether equitable estoppel should be considered in the context of FMLA eligibility, the evidence of record here does not support Adams' arguments. First, Adams does not dispute that he cannot satisfy the threshold element of showing that he is an "eligible employee" as defined by FMLA. Second, the evidence does not support Adams' assertion that he relied on any representation that he was covered by FMLA before he left his post on October 18, 2018. For example:

9

- The leave slip, entitled "Vacation, Personal, Sick Request Form" indicated nothing about FMLA leave when Adams completed it, it was not yet approved, and it included the statement "Please note this form is to be used as a request for consideration of the time off requested. Filling out this form does not guarantee you will be granted the time off from your normal work hours." Leave Form. Adams testified that there was a leave form used for leave other than FMLA leave. Adams Dep. 115.

- The Leave Form was not completed until after Adams had already informed Hinton that he was leaving. Hinton testified that Adams "put the duty logbook and the keys to the vehicle on my desk and said I got to leave right now." Hinton Dep. 55. Hinton testified that Adams stated: "Here's the keys to the truck. Here's the duty logbook. I'm leaving. . . . I said, 'What's going on? What's the problem?' [and Adams said] 'I got to leave right now. My wife is having a baby.'" *Id.* When Hinton asked if Adams could give him some time to find a replacement, Adams responded "I got to leave right now." *Id.* Adams testified that he informed Hinton that he needed to take time off because his wife was going into labor, after which Hinton said, "Okay, fill out a leave slip." Adams Dep. 347; Adams then filled out a leave slip and left. *Id.* Hinton testified, "And he handed me the leave slip, and he departed." Hinton Dep. 56; *see also* Adams Dep. 207-09 ("[Hinton] asked me, 'Well, how much longer can I get you to stay?' I said, 'I need to get to my wife, not another minute.' He said, 'okay.' I said 'All right,' and left.").

- Adams was still not relying on approved FMLA leave at the time he arrived in South Carolina. Adams Dep. 252-53 ("I texted Mr. Hinton on October 22nd at 1:45, and that's probably right after I landed. . . . I told him that he could use the maternity leave for as many days as he can. 'Any other days, you can use my PTO, I will be gone seven days total, but only five working days.' This was on the 22nd at 1:45.").

- Statements indicating that Adams was eligible for FMLA leave were made after Adams left his post, not before. The FMLA paperwork was received by Adams by email after he had arrived in South Carolina. Adams Dep. 219-20. He completed it and was advised that it was approved while he was in South Carolina. *Id.* at 221-25. Adams confirmed that he applied for and received the approval for FMLA leave after he had arrived in South Carolina. *See* Reply 2 ("While on leave, Adams formally applied for, and received, approved FMLA time from Defendant retroactive to October 22, 2018.").

Adams provides no evidence to indicate that he would not have left his post to go to his wife's side in South Carolina if he had known that he was not eligible for FMLA leave. Therefore, the estoppel doctrine does not apply. Adams cannot demonstrate that he is an "eligible employee" as defined by 29 U.S.C. § 2611(2)(B)(ii). Because Adams cannot prove an essential element of

10

his FMLA claim, his claims fail as a matter of law, and Whitestone is entitled to summary judgment. *See, e.g.*, *Hackworth v. Progressive Cas. Ins. Co.*, 468 F.3d 722, 730–31 (10th Cir. 2006) (granting summary judgment to defendant when plaintiff could not produce evidence to show that the employer employed at least 50 employees within 75 miles of plaintiff's worksite); *Humenny v. Genex Corp.*, 390 F.3d 901, 906 (6th Cir. 2004) (holding that the FMLA "eligible employee" requirement applies in all FMLA cases, including retaliation cases); *Adams*, 2021 WL 1063796, at *3 ("[A] required element for both an interference claim and a retaliation claim is that the plaintiff be an eligible employee under the FMLA."). Accordingly, it is not necessary to consider the multitude of other arguments presented by both parties.

## CONCLUSION

For the foregoing reasons,

1. Defendant's Motion for Summary Judgment, ECF No. 70, is GRANTED;

2. Plaintiff's Cross-Motion for Summary Judgment, ECF No. 73, is DENIED;

3. Defendant's request to file a motion for sanctions, ECF No. 61, shall be granted and scheduled by separate Order.

4. Judgment shall be entered by separate Order.

Date: March 22, 2022                              _____/S/_____
                                                  Paul W. Grimm
                                                  United States District Judge