**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(SOUTHERN DIVISION)**

| | | |
|---|---|---|
| ARIUS ADAMS | * | |
| Plaintiff | * | |
| v. | * | Civil Case No. 8:19-cv-02263-TDC |
| THE WHITESTONE GROUP, INC. | * | |
| Defendant | * | |

**MEMORANDUM OPINION**

This is a case alleging interference with an employee's exercise of his rights under the Family Medical and Leave Act ("FMLA"), 29 U.S.C. §§ 2615(a).  Pending before the Court is Defendant Whitestone Group's Motion for Sanctions.  ECF No. 85.  In short, Defendant argues that Plaintiff Arius Adams failed to produce various text messages and recordings related to the pending litigation in which Defendant ultimately prevailed.  *See* ECF No. 82 (granting Defendant's Motion for Summary Judgment).  Plaintiff, in response, admits that he initially failed to produce these materials, but argues that his failure does not merit sanctions.  For the reasons discussed below, Defendant's Motion shall be denied, in part, and granted, in part.

**BACKGROUND**

The facts of this case are recounted in detail in this Court's Memorandum Opinion of March 23, 2022.  ECF No. 81, at 1-4.  Accordingly, I will not recount them in full here, but rather will focus on those contentions relevant to the present discovery-related dispute.

On October 30, 2019, Defendant issued its First Set of Requests for the Production of Documents.  ECF No. 85-4.  The requests asked for, among other things:

- any and all documents that refer, reflect or relate to communications between [Plaintiff] and Defendant regarding Plaintiff's wife's medical condition during her pregnancy[;]

- all documents that refer, reflect, or relate to communications between [Plaintiff] and Defendant regarding [Plaintiff's] FMLA rights during [Plaintiff's] employment with Defendant, including, but not limited to, written or oral leave requests for time off from work[;]

- all statements, notes of interviews, declarations, affidavits, recordings, or other documents that refer, reflect, or relate to interviews, conversations, discussions or other communications [Plaintiff] ha[s] had with any persons (other than the attorney representing [Plaintiff] in this lawsuit) concerning or relating to any allegation contained in [Plaintiff's] Complaint[;]

- all statements, notes of interviews, recordings, or other documents that refer, reflect or relate to interviews, conversations, discussions or other communications [Plaintiff] ha[s] had with any persons (other than the attorney representing [Plaintiff] in connection with [the] Complaint) relating to [Plaintiff's] employment with Defendant[;]

- all documents, including, without limitation, affidavits, statements, sworn statements, audio or video recordings, or testimony of any kind that refer, reflect, or relate to statements of any individual [Plaintiff] believe[s] to have knowledge relevant to the claims contained in [Plaintiff's] Complaint[;] [and]

- all documents that refer, reflect, or relate to any communications [Plaintiff] (or anyone purporting to act on [Plaintiff's] behalf) had with, received from, or sent to any current or former employee of Defendant.

*Id.* at 6, 9-10.  In response to these requests, Plaintiff produced two text messages and seven recordings of telephone conversations that he had with Whitestone employees and potential witnesses related to the case.  ECF No. 85-1, at 3.

2

Defendant raised the sufficiency of Plaintiff's response during his deposition on February 17, 2020, during which Plaintiff admitted that he had an application on his cell phone which had recorded forty-four conversations which Plaintiff previously had with co-workers and union representatives, and possibly his wife, during the time frame relevant to the case.  ECF No. 85-5, at 7-8.  On February 19, 2020, two days after the deposition, Plaintiff produced thirty-eight recordings – the seven that had been initially produced plus thirty-one more that had not been previously produced.  ECF No. 85-1, at 4.  According to Defendant, multiple recordings were relevant to the case, including calls between Plaintiff and Defendant's Vice President.  ECF No. 42, at 2.  During Plaintiff's second deposition on May 8, 2020, Plaintiff testified that "maybe 5 to 10" other recordings existed but could not be produced because they had been "corrupted."  ECF No. 85-6, at 20.   The day before the deposition, Plaintiff's counsel represented that Plaintiff had informed him both that "six recordings were corrupted and are irretrievable", ECF No. 85-7, at 2, and that "no other recordings [were] in his possession."  ECF No. 85-8, at 2.

On May 17, 2020, Defendant filed a request for a pre-Motion conference "due to Plaintiff's failure to produce and/or preserve text messages, notes, emails, and audio recordings that concern his claims of FMLA retaliation and interference."  ECF No. 42, at 1.  Defendant specifically alleged that: 1) Plaintiff had admitted in his deposition that he did not preserve handwritten notes from his termination meeting; 2) Plaintiff admitted to not looking for all relevant communications, including text messages from his wife's cell phone; and 3) only produced some of the relevant electronic mail and recordings.  *Id.* at 1-2.  As a result, Defendant requested that Plaintiff produce his wife's cell phone, make his Google account available for a full and complete search, and make his cell phone available for forensic examination to determine whether the six additional recorded messages not produced were, in fact, corrupted.  *Id*.  In making such requests, Defendant explicitly

preserved his right to seek sanctions for Plaintiff's failure to produce these materials upon Defendant's initial request. *Id.* at 3.

In response, on May 22, 2020, the Court held a telephone conference, after which it ordered: 1) Plaintiff's wife to sit for an additional deposition regarding the production of text messages and emails from her cell phone; 2) Plaintiff, as well as his wife, to prepare for the deposition by conducting a careful and prudent, good-faith search for any relevant messages within the time frame from two weeks prior to October 21, 2018 to November 4, 2018 – the date that Plaintiff returned to work; and 3) Plaintiff to produce his cell phone for inspection by an independent forensic examiner.  ECF No. 44, at 1.  The Court specifically stated, however, that Plaintiff need not respond regarding his inability to produce handwritten notes, and that any discussion or decision on sanctions would be addressed at a later time. *Id.* at 2.  According to Defendant, the forensic "analysis revealed that Plaintiff's cellphone contained hundreds of SMS and MMS text messages, and over 100 recordings related to his claims against Whitestone".  ECF No. 85-1, at 5.  Likewise, according to Defendant, none of these files were corrupted. *Id.*

According to a July 13, 2020 Joint Status Report from the parties, after the forensic examination, the parties "reviewed the items together and determined that a certain number were responsive to Defendant's discovery requests and reached agreement on the production of these items, adding them to Plaintiff's document production."  ECF No. 51, at 2.  Several matters, however, remained in dispute. *Id.*  The parties could not agree on the production of four Multimedia Messaging Service messages, seven audio recordings, and approximately sixty-six text messages. *Id.*  The parties also disputed:

> (1) whether [Plaintiff's wife's] cell phone should be subject to a forensic examination; (2) whether Defendant may depose Plaintiff about the items discovered through the forensic examination of his cell phone; (3) whether the forensic examination of Plaintiff's cell

4

phone should be expanded to include text messages and audio-recordings from December 30, 2018 at 12:01 a.m. to January 9, 2019 at 11:59 p.m., the period of time when the events leading to Plaintiff's termination occurred, and the days immediately following; and (4) whether Plaintiff should be sanctioned pursuant to Rule 37 or the inherent authority of the Court.

*Id.* at 2-3.  On July 30, 2020, the Court held a telephone conference where it set a schedule for the briefing of the issues that remained in dispute.  ECF No. 53.  On September 2, 2020, however, the parties informed the Court that they had reached a resolution to the dispute pursuant to which "Plaintiff agreed to produce the vast majority of the text messages and recordings, and to testify at a limited deposition concerning the text messages and audio recordings revealed through the forensic examination."  ECF No. 57, at 2.  Regarding Plaintiff's wife's cellphone, "Plaintiff and [his wife] searched the cellphone at issue and produced text messages sent to or from Plaintiff or Plaintiff's coworkers at Whitestone between December 31, 2018 at 12:01 a.m. and January 2, 2019 at 11:59 p.m."  *Id*.  Several of the communications were again relevant to the case.  In one of the text messages produced, Plaintiff admitted, for example, that he had been "loafing" on the job.  ECF No. 85-9, at 13.  Defendant also identified additional text messages that relate to, among other things, the due date of Plaintiff's child, Plaintiff's communications with a co-worker regarding the subject matter of his suit, and Plaintiff's efforts to mitigate his damages.  ECF No. 85-10; *see also* ECF No. 85-12, at 3-4 (admitting the authenticity of texts with his wife and regarding Plaintiff's efforts to obtain other employment).

On October 2, 2020, Plaintiff was deposed for a third time, during which Defendant's counsel asked him regarding several of the text messages he had subsequently produced, which contained relevant information, relating to, among other things, Plaintiff's job performance.  ECF No. 85-9, at 16-29.  During the deposition Plaintiff admitted that at least one of the text messages related to his inadequate job performance was accurate and that he would not have produced the

relevant text message were it not for the forensic examination that the Court ordered. *Id.* at 19. Likewise, Plaintiff admitted that, in a voicemail, he promised a co-worker that he would provide him a "couple thousand dollars" if he would testify on Plaintiff's behalf. *Id.* at 24-25.

On November 16, 2020, the Court held a telephone conference, during which the Court ordered the parties to confer on a schedule for briefing of the parties' cross-filings for summary judgment. ECF No. 65. More relevant to the present dispute, the Court deferred Defendant's Motion for Sanctions until the Court had resolved the issue of summary judgment. *Id.*

On March 23, 2022, the Court granted Defendant's Motion for Summary Judgment, although the ruling touched only briefly on the merits of the underlying case. ECF No. 81. As a primary matter, the Court concluded that Plaintiff had failed to establish his eligibility under the FMLA. *Id.* at 9. Second, the Court found that the "evidence does not support [Plaintiff's] assertion that he relied on any representation that he was covered by FMLA before he left his post on October 18, 2018." *Id.* On April 11, 2022, Defendant filed the pending Motion for Sanctions. ECF No. 85. On January 19, 2023, the case was referred to my Chambers for all discovery-related matters, including the pending Motion. ECF No. 93.

## LEGAL STANDARD

Fed. R. Civ. P. 37 grants district courts "wide discretion to impose sanctions for a party's failure to comply with its discovery orders," including entry of default judgment. *See, e.g., Mutual Fed. Sav. & Loan Ass'n v. Richards & Assoc., Inc.,* 872 F.2d 88, 92 (4th Cir. 1989). Similarly, district courts have the "inherent power" to sanction a party, including entry of default or dismissal of an action, when a party abuses the judicial "process at a level that is utterly inconsistent with the orderly administration of justice or undermines the integrity of the process." *Projects Mgmt.*

*Co. v. Dyncorp Int'l, LLC,* 734 F.3d 366, 373 (4th Cir. 2013) (citing *U.S. v. Shaffer Equipment Co.,* 11 F.3d 450, 462 (4th Cir.1993)).

## ANALYSIS

Courts in the Fourth Circuit must consider four factors in determining what sanctions to impose for a party's discovery misconduct: "(1) whether the non-complying party acted in bad faith, (2) the amount of prejudice that noncompliance caused the adversary, (3) the need for deterrence of the particular sort of non-compliance, and (4) whether less drastic sanctions would have been effective. *Southern States Rack & Fixture, Inc. v. Sherwin–Williams Co.,* 318 F.3d 592, 597 (4th Cir. 2003) (quoting *Anderson v. Found. for Advancement, Educ. & Employment of Am. Indians,* 155 F.3d 500, 504 (4th Cir. 1998)).

Defendant requests: 1) reasonable expenses, including attorney's fees, associated with making its request for the pre-Motion discovery conference; 2) reasonable expenses, including attorneys' fees, incurred as a result of Plaintiff's refusal to provide the requested documentation, namely relevant text messages or recordings which Plaintiff initially failed to, but ultimately did produce; and 3) that the Court order the dismissal of a second, but related, action pending in this Court before another Judge.[1]  ECF No. 85-1, at 15-22.[2]  Importantly, Plaintiff's response largely

---

[1] The Court need not decide that portion of the Motion, given that the related action has already been dismissed on other grounds. *Adams v. Whitestone Group, Inc.*, No. 8:21-cv-03120, ECF No. 31 (D. Md. Jun. 27, 2022) (granting Defendant's Motion to Dismiss because the claim was barred by *res judicata*).  *See* ECF No. 90.

[2] Although the parties briefly discuss Plaintiff's failure to preserve the handwritten notes, the importance of the handwritten notes remains an outstanding question given the limited information available about them.  *See* ECF No. 85-1, at 23; ECF No. 87 at 13.  Additionally, the Court notes Judge Grimm's decision to not order their production.  Both factors limit, in comparison, the degree of bad faith associated with Plaintiff's failure to preserve them and the prejudice to Defendant from Plaintiff's failure to produce them.  The Court recognizes that sanctions are an extreme remedy, and accordingly, should only be imposed when there is some degree of clarity as to the prejudice a party has suffered as the result of a discovery violation.

does not contest the facts as recounted by Defendant, but emphasizes Plaintiff's efforts to produce the requested materials after Defendant's request for a pre-Motion Conference.  ECF No. 87, at 6, 10.  Defendant's first two requests are largely well-taken and within the Court's authority: as such, they will be largely granted.

## I.     Plaintiff's Bad Faith

Plaintiff's failure to produce several relevant text messages and phone recordings evidence his bad-faith conduct throughout the discovery process.  Although Plaintiff ultimately produced these materials, his initial production consisted of only seven telephone recordings and two recorded text messages.  Likewise, after producing a second production of thirty-one additional recordings, Plaintiff did not produce several other additional materials until the Court ordered Plaintiff and his wife to conduct a second search and that Plaintiff submit his phone for a forensic examination.  Before producing these materials, Plaintiff maintained that no other recordings were available, and that six of the recordings were corrupted.  ECF No. 85-8, at 2-4.  These latter representations also proved inaccurate.

Once Plaintiff produced all of these materials, several proved highly relevant to the case as they concerned matters such as: Plaintiff's conduct while employed, Plaintiff's knowledge regarding the due date of his child, and Plaintiff's communication with his co-workers regarding the subject matter of the litigation.  Compounding matters, Plaintiff admitted, under oath, that he would not have produced these materials had Defendant not explicitly sought relief from the Court in the form of an Order demanding the forensic examination of Plaintiff's cell phone.  Finally, the contents of the communications further evidence Plaintiff's bad faith, with one of the communications evidencing Plaintiff's promise to a co-worker to provide him compensation if he testified on his behalf.

While, as Plaintiff notes, the Court did not ultimately grant Defendant all of the relief it initially requested in its pre-Motion conference, ECF No. 87, at 10, it granted significant parts of Defendant's request beyond Plaintiff's offer to have his cell phone subjected to forensic examination.  *See* ECF No. 87-1, at 1 (offering only that Plaintiff would make his cell phone available for a forensic examination of messages from late October to early November 2018 at Defendant's cost).  Namely, it also ordered that Plaintiff's wife submit to an additional deposition and that Plaintiff and his wife conduct an additional search of their records for relevant materials. The fact that the Court did not order each of the specific types of relief Defendant initially requested does not mean that it did not ultimately prevail on the Motion.[3]  *See EEOC v. Bardon, Inc.*, No. RWT–08–1883, 2010 WL 989051, at *1 (D. Md. Mar. 12, 2010) ("[T]he Court finds that Defendant is the prevailing party, having won 52% of the Motion to Compel. . . . The Court considers the motions in their entireties. It is quite conceivable that a small minority of victories within a motion would still entitle a party to be the 'prevailing party.'").

Finally, and most importantly, Plaintiff's argument ignores that Defendant's demand, as well as the Court's May 26, 2020 Order, would have been unnecessary had Plaintiff complied with his initial obligation to produce relevant materials in response to Defendant's request.  While a party's failure to produce all relevant discovery upon initial request will not always merit monetary sanctions, in this case, as noted, Defendant refused to produce such materials until it was revealed at his deposition that he had failed to produce dozens of additional messages.  Recognizing his mistake, at this point, sanctions could still have been avoided had Plaintiff readily produced all or most of the materials in question.  However, Plaintiff ultimately did not produce several relevant

---

[3] However, as discussed below, the partial success impacts the amount of fees and costs that Defendant is entitled to recover.

messages and recordings until the Court issued an order requiring Plaintiff and his wife to conduct an additional search, that Defendant forensically examine Plaintiff's phone, and that the parties set a briefing schedule for the litigation of any remaining disputes regarding the messages.  In sum, Plaintiff's argument, which focuses on the breadth of the remedial measures Defendant proposed, ignores its own non-compliance which necessitated Defendant's demand.

All that said, the Court credits that once Plaintiff submitted his phone for forensic examination and this examination had been completed, the parties were able to amicably reach a resolution on the remaining communications in dispute, as well as a deposition schedule for Plaintiff to be deposed regarding the materials belatedly produced.  As discussed below, Plaintiff's good-faith efforts merit a reduction in the fees, as sanctions, sought.

## II.      The Amount of Prejudice

As discussed, Plaintiff's failure to act in good faith prejudiced Defendant in that it had to conduct a second and third deposition of Plaintiff, conduct an additional deposition of Plaintiff's wife regarding her production of relevant communications, hold multiple telephone conferences with the Court regarding Plaintiff's failure to produce the communications requested, hire a forensic expert to examine Plaintiff's phone, and propound several dozen requests for admission to authenticate the communications obtained through the forensic examiner, ECF No. 85-13. Defendant's attorneys' fees and costs associated with resolving the dispute are detailed in the attachments to their Motion.  ECF Nos. 85-14 and 85-15.

Although, as Plaintiff notes, Defendant did not ultimately have to file a motion to compel, ECF No. 87, at 8, such a motion is not a prerequisite to the imposition of sanctions.  This Court "has the inherent authority in appropriate cases to . . . impose . . . sanctions against a litigant or a member of the bar who has acted in bad faith, vexatiously, wantonly, and for oppressive reasons."

*Glynn v. EDO Corp.*, No. JFM-07-01660, 2010 WL 3294347, at *2 (D. Md. Aug. 20, 2010) (quoting *Sanford v. Commonwealth of Virginia*, 689 F.Supp.2d 802, 805 (E.D. Va. 2002)).

That said, this authority "ought to be exercised with great caution, in circumstances such as those involving the very temple of justice being defiled." *Id.* (quoting *Royal Ins. v. Lynnhaven Marine Boatel, Inc.*, 216 F.Supp.2d 562, 567 (E.D. Va. 2002). As discussed above, Plaintiff ultimately proactively worked with Defendant to resolve outstanding disagreements regarding several categories of communications that remained in dispute. As a result, the parties were able to avoid litigation expenses and costs associated with the briefing of a motion to compel, which ultimately would have taken longer and been more expensive than the Court's informal process. Further, Defendant ultimately was able to acquire the messages, authenticate them, and obtain a favorable ruling on summary judgment. For these reasons, as discussed below, the Court will award fees and costs, but reduce the amounts from those requested.

### III.   The Need to Deter the Particular Type of Non-Compliance

Plaintiff's failure to respond to discovery requests forthrightly, including failing to respond to discovery requests until a Court enters an order, raises a serious risk of undermining the civil discovery process. The civil discovery system is founded on each party trusting that the other will honestly comply with its obligations under the Federal Rules of Civil Procedure. *See Aerotek, Inc. v. Tyonek Native Corp.*, No. 1:05cv1080 (JCC), 2006 WL 2126089, at *6 (E.D. Va. Jul. 27, 2006) ("[T]he Court emphasizes the importance of honesty in the discovery process"). Seeking to shield the disclosure of directly relevant information not only encourages a degree of gamesmanship by all parties – plaintiffs and defendants alike – but also increases the time and expense costs for all parties, while endangering judicial economy. Nonetheless, the Court recognizes that this case does not involve even more serious issues, such as "stalling and ignoring direct orders of the court

[which] must obviously be deterred", *Mutual Fed. Sav. & Loan Ass'n v. Richards & Assocs.*, 872 F.2d 88, 93 (4th Cir. 1989), and which merit the most extreme sanctions. *See Robertson v. DECO Security, Inc.*, No. WDQ–09–3093, 2010 WL 3781951, at *5 (D. Md. Sep. 22, 2010) (dismissing case with prejudice where "Plaintiff failed to respond to Defendant's discovery request, Defendant's motions, or the Court's orders; did not explain why she did not respond; and did not actively pursue her case herself when her attorney failed to act.").

### IV.    An Award of Attorney's Fees and Costs is Appropriate.

Taking into account all of the factors listed above, the Court finds it appropriate to require Plaintiff to pay almost all of the reasonable costs and fees associated with the pre-discovery conference, as well as a substantial portion of the costs and fees related to the production of the communications in question.   Nonetheless, the Court recognizes its responsibility to ensure that the sanctions imposed are no broader than necessary to deter future misconduct.   Along these lines, several of the line items in Defendant's fee request are associated with a request for sanctions which it worked towards filing in 2020.   *See e.g.* ECF No. 85-14, at 4, 6; ECF No. 85-15, at 11, 12, 13, 14, 15, 16, 17, 18.   The Court initially deferred ruling on the request, in response to the request for pre-Motion conference, and ultimately deferred resolution of the issue until after summary judgment.   Defendant also seeks reimbursement for fees associated with conducting research related to the dismissal of a claim as a sanction.   *Id.* at 14.   As mentioned above, the Court declines to rule on this request.   Requests for fees associated with both of these categories will be denied.   Additionally, the Court recognizes that Plaintiff voluntarily agreed to a third deposition. While the third deposition would not have been necessary had Plaintiff originally produced all of the requested communications before Plaintiff's first and second deposition, the Court credits Plaintiff for voluntarily agreeing to the deposition as a result of the party's negotiations.   The Court

also recognizes that some of the time devoted to preparation for the third deposition – such as reviewing messages and preparing questions related to them – would have been necessary in advance of the first deposition even if all of the messages had been produced timely. *See e.g.* ECF No. 85-15, at 15 (seeking to collect fees for "prepar[ing] for third deposition of Plaintiff by reviewing in detail transcripts of approximately two dozen recorded phone calls"). Accordingly, the Court will reduce, by fifty percent, the attorney's fees requested associated with the third deposition, *see e.g. id.* at 8, 9, 11, 12, 13, 14, 15, as well as deny all fees associated with briefing related to the third deposition and other matters which the parties amicably resolved. *Id.* at 9; *see also id.* at 12 (seeking fees related to briefing related to Plaintiff's wife's cell phone which ultimately was not needed); *id.* at 13 (same). The Court will exclude any entries related to the review of discovery that would have been needed regardless of when the messages would have been produced, *see id.* at 5 (requesting fees for analyzing "whether recordings of conversations after November 4, 2018 are within the scope of discovery requests from Defendant to Plaintiff."); *id.* at 11 ("preparing for Plaintiff's deposition by reviewing with L. Sanders dozens of call recordings produced by Plaintiff"), and the forensic examination of Plaintiff's wife's cell phone – which ultimately did not occur. *E.g. id.* at 10. Finally, the Court will exclude any fees requested related to the alleged deletion of files, of which the Court currently does not have evidence. *Id.* at 8. In sum, having reviewed Defendant's request for reimbursement, the Court will exclude $13,426 in requested fees from Exhibit L, and exclude $825 in requested fees from Exhibit K. For the same reason, the Court will not award half of the costs associated with the third deposition. In total, the Court will award Defendant $36,042 in attorney's fees and $3,410.40 in costs.[4]

---

[4] The Court does not award the amount requested for the second deposition, as it was separately requested in the Bill of Costs. ECF No. 85-1, at 17 n. 4.

**CONCLUSION**

For the reasons stated above, Defendant's Motion for Sanctions shall be granted, in part, and denied, in part.

So ordered.

Date:   March 30, 2023                    _____/s/_____
                                          Ajmel A. Quereshi
                                          U.S. Magistrate Judge

14